# UNITED STATES DISTRICT COURT
## DISTRICT OF NORTHERN OHIO

**FILED**
01 MAY -7 PM 4: 06

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

| | |
|---|---|
| **JANE M. DOE,** | ) CASE NO.: |
| Plaintiff, | ) |
| | ) JUDGE: |
| v. | ) **1:01CV1112** |
| **UNITED CONSUMER** | ) |
| **FINANCIAL SERVICES,** | ) **COMPLAINT** |
| Defendant, | ) |
| | ) **JUDGE O'MALLEY** |
| **WILLIAM CISZON,** | ) |
| Defendant, | ) **MAG. JUDGE PERELMAN** |
| **DEBORAH/DEBBIE WOODWORTH,** | ) |
| Defendant, | ) |
| **BRIAN DAVIS,** | ) |
| Defendant, | ) |
| **Un-Named UCFS EMPLOYEE #1,** | ) |
| **Un-Named UCFS EMPLOYEE #2,** | ) |
| **Un-Named UCFS EMPLOYEE #3,** | ) |
| **Un-Named UCFS EMPLOYEE #4,** | ) |
| **Un-Named UCFS EMPLOYEE #5,** | ) |
| **Un-Named UCFS EMPLOYEE #6,** | ) |
| Co-Defendants. | ) |

Plaintiff, JANE M. DOE, using a pseudonym to maintain her personal privacy, by and through counsel, states:

## INTRODUCTION

1. This is a civil rights action brought by an individual against her former employer. Plaintiff Jane M. Doe (hereinafter "Plaintiff" or "Doe") was placed with defendant employer United

Consumer Financial Services (hereinafter "Defendant" or "UCFS") by a temporary employment agency (hereinafter the "Agency") to do telephone collection work. The Defendant's purposeful discovery of Plaintiff's transgender-related disability, refusal to accommodate same upon discovery thereof, and subsequent termination of Doe's employment based on her transgender-related disability status constitutes sex stereotyping, sex-based discrimination, hostile-work-environment sexual harassment, failure to accommodate a physical handicap, wrongful invasion of privacy, intentional infliction of emotional distress, and wrongful discharge in violation of public policy, and is therefore in violation of federal and state laws.

2. Plaintiff was granted the right to bring this suit by the U.S. Equal Employment Opportunity Commission in a letter dated February 6th, 2001 and received by Plaintiff February 8th, 2001. (See Plaintiff's Exhibit 1, hereto attached.)

3. Jane M. Doe asserts the following claims:

   A) <u>Count I - Title 42 United States Code § 2000e (hereinafter "Title VII")</u> - for unlawful discrimination on the basis of sex;

   B) <u>Count II - Title VII</u> - for unlawful discrimination in the form of hostile-work-environment sexual harassment;

   C) <u>Count III - Title 42 United States Code § 126, the Americans with Disabilities Act (hereinafter "the ADA")</u> - for failure to accommodate a disability of which Defendant was put on notice that Plaintiff possessed;

   D) <u>Count IV - Title 42 United States Code § 1983</u> - for the deprivation of rights, privileges, and/or immunities not specifically addressed elsewhere in this complaint, under color of state law;

E) <u>Count V - Ohio common law tort of Invasion of Privacy</u> - for inappropriate and unlawful intrusion into Doe's privacy under the pretext of conducting a purported "background check," and for publicizing details of Doe's transsexual condition with which the public had no legitimate concern;

F) <u>Count VI - Ohio common law tort of Intentional Infliction of Emotional Distress (hereinafter "IIED")</u> - for Defendants' cumulative actions with regard to the Plaintiff, including, but not limited to: sexual harassment, sexual discrimination, sex stereotyping, failure to accommodate an obvious and known disability, creating and/or maintaining a hostile work environment, wrongful discharge, unwarranted invasion of privacy and publication of personal facts;

G) <u>Count VII - The Ohio common-law tort of Wrongful Discharge In Violation Of Public Policy</u> - for discharge in violation of the public policies explicitly and implicitly stated in the federal statutes enumerated in Counts I-III; and

H) <u>Count VIII - The Ohio common-law tort of Slander</u> - for publishing a false account alleging that Plaintiff had been on television as a known or declared transsexual.

4. Plaintiff Doe asserts liability for the aforesaid multiple claims against the applicable Defendants, jointly and severally, as follows:

A) Count I - United Consumer Financial Services and William Ciszon (Ciszon in both personal and corporate capacities).

B) Count II - United Consumer Financial Services and William Ciszon (Ciszon in both personal and corporate capacities).

C) Count III - United Consumer Financial Services.

D) Count IV - All Defendants, in corporate <u>and</u> personal capacities, where applicable.

E) Counts V through VII - All Defendants, in corporate <u>and</u> personal capacities, where applicable.

F) Count VIII - All Defendants, in corporate <u>and</u> personal capacities, where applicable.

## JURISDICTION

5. This Court has jurisdiction over Counts I - III of this action under 42 U.S.C. § 2000e (a) & (b), 42 U.S.C. § 12111 et seq., and 42 U.S.C. § 1983, respectively.

6. This Court has pendent jurisdiction over Counts IV - VII of this action, which are tort claims under Ohio Common Law.

## PARTIES

7. The Plaintiff, Jane M. Doe, is an individual and a citizen of the State of Ohio with a place of residence in Westlake, Ohio.

8. Co-Defendant United Consumer Financial Services (hereinafter "UCFS"), is a financial organization owned by Scott Fetzer Company, a division of Berkshire Hathaway Investment Company, the parent corporation of GEICO Insurance. Plaintiff Jane M. Doe worked at the Defendant's office located at 865 Bassett Road, Westlake, Ohio 44145.

9. Co-Defendant William Ciszon, at all times material to this case, served as Vice President of UCFS.

10. Co-Defendant Deborah/Debbie Woodworth, at all times material to this case, served as UCFS's Personnel/Human Rsources Director.

11. Co-Defendant Brian Davis, at all times material to this case, served as a collections manager or in a similar capacity.

12. Un-Named Co-Defendant UCFS Employee #1

13. Un-Named Co-Defendant UCFS Employee #2

14. Un-Named Co-Defendant UCFS Employee #3

15. Un-Named Co-Defendant UCFS Employee #4

16. Un-Named Co-Defendant UCFS Employee #5

17. Un-Named Co-Defendant UCFS Employee #6

## STATEMENT OF FACTS

18. The Plaintiff was born on May 27, 1942, and was designated as male based solely upon a cursory genital examination, as was then the common practice for neonatal sex determination.

19. Plaintiff was diagnosed with Gender Identity Disorder (hereinafter "GID") in 1973.

20. Specialized scientific research in recent years indicates that GID (a.k.a. "Transsexualism") is not a choice, a personality disorder, or a form of psychosis. Rather, GID has been shown to be a congenital developmental anomaly, occurring in the earliest weeks of fetal development. In GID, that portion of the brain which is understood to regulate gender identity develops structurally in accordance with one gender, while the rest of the body develops genetically and physically the opposite.

21. Plaintiff has been undergoing the prescribed treatment for GID, which includes hormone therapy and surgery, continuously and without interruption from 1973 to the present.

22. In October 1973, Plaintiff legally changed her stereotypically masculine name to a traditionally feminine one. Plaintiff has lived continuously and without interruption as a person of the female gender in all aspects of daily life, congruent with her prescribed treatment plan and the requirements and protocols of the international standards of care for transsexuals.

23. Plaintiff has never appeared, voluntarily or involuntarily, on any television show, program, or broadcast.

24. On or about May 5th, 2000, Plaintiff filled out an application for employment with The Reserve Network, an employment agency (hereinafter the "Agency").

25. Plaintiff's application for employment included information attesting to her three years worth of college credit, which was earned from three separate colleges.

26. The Plaintiff was subsequently placed by the Agency with UCFS in a "temp-to-hire" position on or about June 30th, 2000.

27. Defendant reported satisfactory reviews of Plaintiff's performance to the Agency.

28. On or about July 7th, 2000, two Agency employees visited the UCFS location where Plaintiff was working. The purpose of the visit was to assess both the Plaintiff's performance in the position and UCFS's satisfaction with the placement. The Agency employees met with UCFS Human Resources Coordinator Deborah/Debbie Woodworth.

29. During the meeting between the Agency employees and Woodworth, the latter asked the former "Have you noticed anything strange about [the Plaintiff]?" The Agency employees replied in the negative, and Woodworth informed them, as a point of humor or ridicule, that some of the other UCFS employees were referring to the Plaintiff as "Mrs. Doubtfire." When the Agency employees did not respond to Woodworth's comment with laughter or any other indication of humor, Defendant Woodworth quickly added "but they don't say it in front of [Doe]."

30. UCFS subsequently initiated a background check on the Plaintiff. Despite Plaintiff's three years' worth of college attendance - and the reasonable inference therefrom that Plaintiff had therefore graduated from high school, Defendant included in its background check an attempt to verify Plaintiff's high school attendance and/or graduation 40 years prior. (Note: Upon information and belief, UCFS does routine background checks that usually only

include a driver's license check, validation of the social security number, and a criminal record check.)

31. On the morning of July 10th, 2000, Defendant Woodworth called Plaintiff at home prior to her scheduled shift. Defendant informed Plaintiff that UCFS was having difficulty verifying Plaintiff's high school records. Plaintiff replied that she had legally changed her name since her graduation from high school, and that her records might still be under her previous name. Defendant Woodworth asked Plaintiff what her prior name was, whereupon Plaintiff told Defendant the name.

32. Plaintiff reported for work at 4:30 pm on July 10th, 2000 - her regularly scheduled time. At 4:30 pm Defendant Brian Davis approached the Plaintiff and said that he wanted to speak with her. Defendant Davis led Plaintiff to an office where the following people were present: Brian Davis (hereinafter "Davis"), William J. Ciszon, vice-president of UCFS (hereinafter "Ciszon"), and Debbie Woodworth, personnel director for UCFS (hereinafter "Woodworth").

33. Defendant Ciszon immediately informed Plaintiff that her forty-year-old high school records could not be located for verification. Plaintiff informed Defendant Ciszon, as she had informed Defendant Woodworth, that the reason UCFS could not verify her high school graduation was because she had legally changed her name thereafter.

34. Defendant Ciszon began asking Plaintiff personal and offensively probing questions, such as, "Are you a man dressed as a woman?" "What gender are you?...Just looking at you I can't tell."

35. Defendant immediately told Defendant Ciszon that she found his questioning inappropriate, highly offensive, and irrelevant to the performance of her job. Plaintiff would only tell

Defendant Ciszon that she was a transgendered woman and had been so since 1973. In support of her position Plaintiff also presented to Defendant Ciszon:

1) her court ordered judgment of name change dated October 22, 1973,

2) her then-current Ohio State Driver's License (indicating her sex as female),

3) her Social Security Card in her current name, and

4) her State of Ohio Notary Public I.D.

All pieces of identification had the Plaintiff's current name and/or current likeness.

36. Defendant Ciszon informed Plaintiff that the documentation she presented was not enough. He continued interrogating Plaintiff about her sex, asking her questions such as "Have you had an operation?" and "Where in the process are you?"

37. Plaintiff asked whether someone had complained about her in some way. Defendant Ciszon told Plaintiff that late on Thursday, July 6th, 2000, one employee complained that "a man dressed as a woman was using the ladies room," and that the complainant knew Plaintiff was transgendered because they had seen her on television at some time previous.

38. Defendant told Plaintiff that he required medical evidence of her sexuality. He ended the meeting by instructing the Plaintiff to go home and to call the next afternoon, July 11th, 2000, to see whether she was to report to work that day.

39. Plaintiff went to the employment agency Reserve Network on July 11th, 2000, to write a statement regarding her interrogation and dismissal at UCFS the day before. While Plaintiff was at Reserve Network Defendant Woodworth called the agency on behalf of UCFS to inform the agency that UCFS no longer required Plaintiff's services. When asked why Plaintiff was dismissed, Woodworth could not provide a reason other than that was what Ciszon had instructed her to say.

40. As a direct result of the conduct of United Consumer Financial Services in refusing to allow the Plaintiff to continue her employment with them, Doe suffered emotional distress including anxiety and depression, humiliation, and extreme embarrassment.

## COUNT I - TITLE VII: SEX DISCRIMINATION

41. Plaintiff repeats the allegations contained in Paragraphs 1-40 of this Complaint and incorporates them herein.

42. Defendant is an "employer" under 42 U.S.C. § 2000e (b) for the purposes of this lawsuit.

43. Plaintiff is an "employee" under 42 U.S.C. § 2000e (f) for the purposes of this lawsuit.

44. Defendant is in violation of 42 U.S.C. § 2000e-2 which forbids discrimination on the basis of sex - to include sex stereotyping and discrimination against individuals for their failure to conform to expected gender-role norms and behaviors. Defendants either viewed Doe as a woman who, as a transgendered person formerly identified as male, did not sufficiently conform to the Defendants' expectations of what a woman should look and/or act like, or Defendants considered Doe to be essentially "a man dressed as a woman," and therefore likewise not sufficiently in conformance with their gender-role expectations of men.

## COUNT II - TITLE VII: SEXUAL HARASSMENT

45. Plaintiff repeats the allegations contained in Paragraphs 1-44 of this Complaint and incorporates them herein.

46. Defendant is an "employer" under 42 U.S.C. § 2000e (b) for the purposes of this lawsuit.

47. Plaintiff is an "employee" under 42 U.S.C. § 2000e (f) for the purposes of this lawsuit.

48. Defendant is in violation of 42 U.S.C. § 2000e-2 which forbids discrimination on the basis of sex - to include sexual harassment by the creation of a hostile work environment. Defendants individually and collectively created, maintained, and/or tolerated a hostile work environment in which they discriminated against and/or harassed Doe, in violation 42 U.S.C.

§ 2000e, because of her lack of conformity with Defendants' sex stereotypes and/or gender-role expectations. Un-Named Co-Defendant UCFS Employees initially created the hostile work environment by referring to Doe pejoratively as "Mrs. Doubtfire." The name "Mrs. Doubtfire" was in reference to the main character in a 1993 motion picture of the same name in which a man, played by actor Robin Williams, cross-dresses and impersonates a woman. Defendant Woodworth, UCFS's human resources/personnel manager, knew of the other employees' reference to Doe and, in turn, mentioned it to Agency representatives as a point of humor. The degree of hostility in the work environment increased. Un-Named Co-Defendant Employees began to speculate and/or confabulate about Doe's supposed appearance on television as a transsexual person, leading at least one employee to complain to UCFS management with the conclusive statement that "a man dressed as a woman," referring to Doe, "was using the ladies' rest room," which complaint ultimately resulted in Defendant Ciszon's aggressive, accusatory, offensively intrusive public interrogation of Doe on July 10th, 2000 and his subsequent firing of her the next day.

49. As a result of Defendants' wrongful conduct, Plaintiff Doe has suffered damages for which Defendants are liable.

COUNT III - A.D.A.: FAILURE TO MAKE REASONABLE ACCOMMODATION

50. Plaintiff repeats the allegations contained in Paragraphs 1-49 of this Complaint and incorporates them herein.

51. Plaintiff is an "employee" 42 U.S.C. § 12111(4) for the purposes of this lawsuit.

52. Defendant UCSF is a "person" and "employer" under 42 U.S.C. § 12111 (5) & (7) for the purposes of this lawsuit.

53. Defendant is a "covered entity" as a person engaged in an industry affecting commerce who has 15 or more employees, or as agents thereof, under 42 U.S.C. § 12111 (7) for the purposes of this lawsuit.

54. Plaintiff's Gender Identity Disorder results from a physical impairment and therefore is not exempt from coverage under Section 42 U.S.C. § 12211(b)(1).

55. Plaintiff's GID is a physical and/or mental impairment which has substantially limited one or more of Plaintiff's major life activities.

56. Plaintiff is regarded as having the physical and/or mental impairment of GID.

57. Plaintiff is a "qualified individual with a disability" under 42 U.S.C. § 12111(8) for the purposes of this lawsuit.

58. Defendant refused to make "reasonable accommodations" - within the definition thereof under 42 U.S.C. § 12111(9) - for Doe's disability.

59. Defendant's refusal to reasonably accommodate Doe's disability was not due to "undue hardship" within the definition thereof under 42 U.S.C. § 12111(10).

60. Defendant's behavior toward Doe indicates that Defendants accurately perceived Doe's transgendered status and, *a fortiori*, recognized Doe's disability. Defendant's failure, nevertheless, to provide Doe with alternative restroom facilities as accommodation of Doe's disability is in violation of 42 U.S.C. § 12112 et seq.

61. As a result of Defendants' wrongful conduct, Plaintiff Doe has suffered damages for which Defendants are liable.

## COUNT IV - U.S.C. § 1983

62. Plaintiff repeats the allegations contained in Paragraph 1-61 of this Complaint and incorporates them herein.

63. Plaintiff is a "citizen" under the 42 U.S.C. § 1983.

64. Defendants are "persons" within the meaning of this section and its jurisdictional counterparts.

65. Ohio Revised Code (hereinafter "O.R.C.") § 4112.02 (A) prohibits unlawful discriminatory practices by employers on the basis of, *inter alia*, sex and disability. However, O.R.C. § 4112.01(A)(16)(b) specifically excludes from such statutory protection the disabilities of "Transsexualism" and "Gender Identity Disorders Not Resulting From Physical Impairments."

66. Defendants' discrimination against Doe, culminating in Doe's wrongful discharge from her employment as UCFS, was done with the understanding that such was permitted under O.R.C. § 4112 et seq., and was therefore "under color of state law."

67. By not granting Doe all of the rights afforded her as a citizen of this country Defendants are in violation of 42 U.S.C. § 1983.

68. As a result of Defendants' wrongful conduct, Plaintiff Doe has suffered damages for which Defendants are liable.

## COUNT V - INVASION OF PRIVACY - WRONGFUL INTRUSION INTO PRIVATE ACTIVITIES

69. Plaintiff repeats the allegations contained in Paragraphs 1-68 of this Complaint and incorporates them herein.

70. Doe had a reasonable expectation of privacy as an employee of UCFS.

71. Defendant UCFS routinely does minor background checks of its employees, which background checks typically consist of a driver's license check, validation of the employee's social security number, and a criminal records check.

72. Defendant UCFS contacted Doe's high school to verify her attendance and graduation therefrom. UCFS purportedly requires a high school diploma or its equivalent as a

prerequisite for collection positions such as that held by Doe, and the need to verify Doe's high school records was ostensibly the basis for such contact. However, in addition to information about her high school education, Doe had also already provided Defendants, either directly or through the Agency, evidence that she had subsequently completed a cumulative total of three years of college study at three different institutions. Since a high school diploma or its equivalent is universally a prerequisite to college admission, Defendants could have reasonably inferred proof of Doe's high school completion therefrom. Accordingly, Defendants' delving into Doe's distant past should be seen for what it was - a pretextual intrusion designed to determine whether Doe had ever been considered male or used a male-gendered name.

73. Defendant's unwarranted and pretextual intrusion into Doe's past constitutes two of Ohio's three types of tort of invasion of privacy: (1) the publicizing of one's private affairs with which the public has no legitimate concern, and (2) the wrongful intrusion into one's private activities.

74. Defendant knowingly and maliciously questioned Plaintiff about sensitive, highly-personal matters well beyond the scope of a normal background check.

75. As a result of Defendants' wrongful conduct, Plaintiff has suffered damages for which Defendants are liable.

## COUNT VI - INVASION OF PRIVACY- WRONGFUL PUBLICATION OF ONE'S PRIVATE AFFAIRS

76. Plaintiff repeats the allegations contained in Paragraphs 1-75 of this Complaint and incorporates them herein.

77. Doe had a reasonable expectation of privacy as an employee of UCFS.

78. Defendants Ciszon and Woodworth wrongfully published Doe's private, confidential information regarding her name change - and the reasonable inferences drawn therefrom - to other UCFS employees.

79. Woodworth wrongfully published said information to Ciszon, who's only plausible interest therein was the intrusion into Doe's private affairs.

80. Ciszon wrongfully published said information to those other employees present at (or within earshot of) his confrontational, interrogational meeting with Doe on July 10th, 2000.

81. As a result of Defendants' wrongful conduct, Plaintiff Doe has suffered damages for which Defendants are liable.

## COUNT VII - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

82. Plaintiff repeats the allegations contained in Paragraphs 1-81 of this Complaint and incorporates them herein.

83. Defendants should have known that their intrusion into Doe's privacy (collectively and individually, as applicable) would cause Doe serious emotional distress.

84. Defendants should have known that their interrogation of Doe (collectively and individually, as applicable) on July 10th, 2000, would cause Doe serious emotional distress.

85. Defendants' interrogation of Doe (collectively and individually, as applicable) on July 10th, 2000, had no reasonable relation to Doe's employment or work performance. It was not the sort of aggressive, hostile behavior to which anyone - in any like or related civilian, private sector workforce employment situation - should be subjected. It was so extreme as to be utterly intolerable in a civilized society.

86. Defendants' conduct has caused Doe to suffer severe emotional distress, to include acute and prolonged anxiety and depression, which no reasonable person could, or should, be expected to endure.

87. As a result of Defendants' wrongful conduct, Plaintiff Doe has suffered damages for which Defendants are liable.

## COUNT VIII - SLANDER

88. Plaintiff repeats the allegations contained in Paragraphs 1-87 of this Complaint and incorporates them herein.

89. An un-named co-defendant UCFS employee informed Ciszon that the employee, or a co-employee, had previously seen Doe on a television show in the context of being transsexual, and that such was the basis for the employee's knowledge that "a man dressed as a woman was using the ladies' room." Doe has never been on television in the context of transsexualism or GID, and the employee's claim to the contrary was false for impossibility. Publication of such falsity contributed directly to Defendants' multiple acts of discrimination against Doe.

90. As a result of Defendants' wrongful conduct, Plaintiff Doe has suffered damages for which Defendants are liable.

## JURY TRIAL DEMAND

91. Plaintiff respectfully requests a jury trial for any and all issues so triable.

WHEREFORE, the plaintiff, Doe, respectfully asks this Court to:

A) Award Doe money damages, including emotional distress, compensatory and punitive damages;

B) Award Doe any special damages or statutory penalties available under the causes of action from which this Complaint arises;

C) Award Doe attorney's fees and costs;

D) Enjoin Defendant UCFS from refusing to hire and retain transgender persons on the basis of not being willing to accommodate the uniqueness of the above-mentioned condition;

E) Order such other appropriate relief as the interests of justice may require.

Respectfully submitted,

RANDI A. BARNABEE
Federal Practice Attorney
D.A. Smith Co., L.P.A.
9265 Olde Eight Road
Northfield Center OH 44064-2013
(330)467.5000

## CERTIFICATE OF SERVICE

I certify that a true and accurate of copy of this forgoing Complaint was sent by Certified U.S. Mail on the 7th day of May, 2001to each individual Defendant, in care of United Consumer Financial Services, at: 865 Bassett Road, Westlake, OH 44145.

RANDI A. BARNABEE